No. 13104

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

CRAIG EMERSON,

Defendant and Appellant.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

McKinley Anderson argued, Bozeman, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Charles E. Erdmann Deputy Attorney General, argued,
Helena, Montana
Donald White, County Attorney, appeared, Bozeman,
Montana

---

Submitted: February 2, 1976

Decided: FEB 2 4 1976

Filed: FEB 2 4 1976

Thomas Jr. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

Defendant appeals from a Gallatin County judgment of conviction for robbery entered on the verdict of a jury, the Hon. W. W. Lessley, presiding.

In the early morning of January 11, 1975, Three Forks and Gallatin County law enforcement authorities were notified by one Wilbur "Swede" Capps of Three Forks that he had been attacked near his home and his wallet containing $200 to $300 was taken.

The facts surrounding defendant's arrest are not substantially in dispute. After receiving the report, investigating officers backtracked fresh footprints in the snow from the scene of the incident to defendant's vehicle. The officers knew defendant was staying in a trailer owned by James Aughney and proceeded there in furtherance of their investigation. At the trailer, the owner allowed the officers to enter and directed them to the room where defendant was sleeping. The door to this room was ajar. The officers entered and found defendant intoxicated and unconscious on the bed. He was awakened by the officers and uttered "I didn't mean to hurt him" before losing consciousness. Further shaking by the officers again brought the defendant around. He raised up and stated, "The money is in the closet in the blue pants."

Visible to the officers through an open closet door was a wad of currency sticking out of a pair of blue pants. Earlier, the officers noticed in plain view a pair of snow covered tennis shoes, as they entered defendant's room.

The officers took the shoes and the money and checked the tracks in the snow before arresting defendant. As he was being taken to jail, defendant told the officers he had thrown Capps' wallet on top of the drug store. Upon investigation, the wallet was discovered on the roof of the drug store.

A motion to suppress evidence and statements of defendant based on the circumstances surrounding the arrest was heard by the district court and denied.

On appeal defendant alleges an illegal and unconstitutional search by the law enforcement officers and urges violation of defendant's constitutional rights for failure to give Miranda warnings to defendant before and shortly after his arrest. In addition, defendant contends omissions in the affidavit accompanying the original application for leave of the court to file an Information deprived the district court of jurisdiction requiring dismissal of this action. Further, defendant argues the district court acted beyond its power by allowing an amended application and affidavit to be filed to remedy the omissions in the original affidavit.

Initially, we consider whether defendant was the victim of an unreasonable search. In so doing, we must determine whether a search in fact took place. The definition of a search was stated by this Court in State v. Williams, 153 Mont. 262, 269, 455 P.2d 634:

> "Plunging directly into the federal constitutional thicket we find that a 'search' has been held to imply an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action; it implies an exploratory investigation or quest. * * *"

A Montana federal district court case also provides a discussion of what constitutes a search. In United States v. Lodahl, 264 F.Supp. 927, 928, the Court stated:

> "The courts have not solved search and seizure problems by technical applications of the rules of agency. It is not likely that any person in possession of a house containing contraband articles had ever given a third person--child; wife; friend--actual authority to invite police officers in; and yet, where the person opening the door invites an officer to enter, an observation by that officer of what is in plain sight

after the entry is not held to be an unreasonable search. <u>If because of some lack of authority on</u> <u>Moisan's part there was a trespass, that would</u> <u>not convert the observation of what was in plain</u> <u>sight into a search.</u>  This is so because the <u>word 'search' denotes an intention to find and</u> <u>absent such an intention there simply is no</u> <u>search.</u>  The Constitution forbids searches, not trespasses.  The defendant may have been the victim of a very innocent trespass--he was the victim of incredibly bad luck--but he was not the victim of an unreasonable search and seizure." (Emphasis added.)

Applying these definitions, we cannot say that a search was conducted by the law enforcement officers while they were in defendant's room.  Here, the officers intended only to speak to defendant when they entered his room through an open door.  What they did notice was in plain view or directed to their attention by defendant.  Given no intention to find, there can be no search. State v. Braden, 154 Mont. 90, 97, 460 P.2d 85.  Thus defendant's contention fails.

Alternatively, defendant claims there was constitutional error by the law officers in failing to give defendant Miranda warnings as he lay in his room or when he was driven to jail after he was arrested.  Such error defendant contends should cause this Court to reverse the district court's denial of the motion to suppress.  The state submits that the Miranda warnings were not required since defendant was not subject to interrogation.  The state further argues that giving defendant Miranda warnings would have been a useless act in view of his state of intoxication.  We agree.

The constitutional protections afforded by Miranda warnings are required in instances where one is subjected to custodial interrogation.  Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L ed 2d 694.  In the instant case defendant's utterances were not in response to questioning.  Due to the obvious intoxication of defendant, the law enforcement officers involved refrained

- 4 -

from giving him a Miranda warning and from questioning him. Thus there was no infringement of defendant's constitutional privilege against self-incrimination and right to counsel guaranteed him by the due process clause of the Fourteenth Amendment.

Doubt with regard to the voluntariness of defendant's statements going to their admissibility as evidence is also raised. Defendant urges that his physical and mental condition as a result of intoxication made it impossible for him to give a free, voluntary and uncoerced statement to the police, or to fully appreciate the consequences of his statements. 3 Wigmore, Evidence, §841 (Chadbourn rev. 1970), discusses the admissibility of confessions where the intoxication of declarant is self-induced. That discussion cites a New York Court of Appeals decision which we find helpful. In People v. Schompert, 19 N.Y.2d 300, 226 N.E.2d 305, 309, the court stated:

> "Both the cases and Wigmore's analysis, therefore, support a distinction between confessions made under self-induced intoxication and those, however truthful, coerced or the product of police-induced intoxication. In the case of self-induced intoxication, the kind involved on this appeal, the criterion should be trustworthiness rather than any automatic application of a degree of intoxication, in determining the admissibility of confessions. If trustworthiness is the criterion, then it is logical that the trustworthiness be testable by the content of the confession or evidence of subsequent events which confirm the reliability of the confession".

Here, the subsequent events confirmed the reliability of defendant's statements. Therefore, we cannot say the court erred in admitting the statements in evidence. State v. Chappel, 149 Mont. 114, 423 P.2d 47; State v. Rossell, 113 Mont. 457, 127 P.2d 379; State v. Dixson, 80 Mont. 181, 260 P. 138.

Considering the affidavit accompanying the initial application for leave to file an Information and the amendment allowed by the district court, we find no error. Admittedly section 95-1301, R.C.M. 1947, requiring that the affidavit establish probable

cause to believe that the offense has been committed was violated by the original affidavit. This, however, is patently a procedural matter, not a substantive issue involving the jurisdiction of the court. State v. Logan, 156 Mont. 48, 55, 473 P.2d 833.

Given such a procedural defect the district court does have the power to allow the affidavit to be amended. This power is essential to the efficient administration of justice and the basic right of defendant to prepare his own defense. State ex rel. Bell v. District Court, 157 Mont. 35, 37, 482 P.2d 557. Defendant's technical application of section 95-1503 and section 95-1505, R.C.M. 1947, cannot overcome these weighty concerns.

The judgment of conviction is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices