No. 14307

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

THE STATE OF MONTANA,

           Plaintiff and Respondent,

-vs-

RICHARD LEE BIER,

           Defendant and Appellant.

Appeal from:  District Court of the Eighth Judicial District,
            Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Cameron Ferguson argued, Public Defender, Great Falls,
          Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mary B. Troland argued, Assistant Attorney General,
         Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls, Montana

Submitted:  November 27, 1978

Decided: MAR 9 - 1979

Filed: MAR 9 1979

_Thomas J. Kearney_
                        Clerk

Mr. Justice Daniel J. Shea delivered the opinion of the Court.

Defendant appeals from a conviction of negligent homicide, section 95-4-104, R.C.M. 1947, now section 45-5-104 MCA, following a jury trial in the Cascade County District Court.

The facts show that in the early morning of June 25, 1977, Deputy Sheriff Donovan responded to a call concerning a possible suicide at the Red Wheel Trailer Court in Great Falls. He arrived at about 1:30 a.m. and noticed defendant Richard Bier wave and holler at him to hurry. Donovan entered the trailer and saw defendant's wife, Sharon Bier, on the floor in the doorway between the bedroom and hall of the trailer. She was bleeding from a neck wound. Defendant told Donovan that his wife shot herself. A .357 Magnum revolver lay on the bed in the bedroom. Moments later, an ambulance arrived. Temporary aid was administered and Sharon Bier was transported to the hospital accompanied by the defendant. Deputy Donovan stayed behind. He washed his hands in the trailer's bathroom and noticed blood in the basin and on a cabinet. He photographed the interior of the trailer, identified and took custody of the gun, bullets and spent casing, and saw that the two minor children present were cared for before proceeding to the hospital.

When Deputy Donovan arrived at the hospital, he placed each of Mrs. Bier's hands in plastic bags and taped them shut to preserve any evidence of gun powder. He then located defendant for questioning. After being read his rights, defendant related the events leading up to the shooting.

Defendant stated he and his wife had been at the stock car races all evening and consumed a total of three six-packs of beer. Mrs. Bier, normally a mild social drinker,

-2-

finished two six-packs. When the couple returned home, an argument ensued. Intent on leaving and avoiding further quarrel, defendant went into the bedroom to ready his departure. Mrs. Bier stood in the bedroom doorway, apparently to block his exit. Defendant reached into the closet, pulled a gun from its holster, cocked it and cast it on the bed stating words to the effect that to stop him she'd have to shoot him. Defendant turned away and his wife picked up the gun, held it with both thumbs on the trigger and pointed it at her head. Defendant shouted "that damn thing's loaded" and either grabbed or slapped at the gun to avert its aim. It discharged and Mrs. Bier collapsed on the floor.

Pursuant to police procedure, Deputy Donovan took hand swabs of defendant and his wife for analysis of possible gun powder residue by the proper authorities. The test results showed no appreciable level of residue from which to conclude either Mr. or Mrs. Bier was holding the gun when it discharged. Defendant had washed his hands while his wife was being administered medical aid at the trailer. Mrs. Bier never regained consciousness and died six days after the shooting.

About a month after the incident, defendant was questioned at the Cascade County Sheriff's Office. He essentially recounted the statement previously given except that he thought maybe he'd grabbed rather than slapped at the gun when it discharged, and that perhaps this had caused the gun to fire.

On October 17, defendant was charged with negligent homicide and on October 19, he entered a plea of not guilty.

The State's case consisted of Deputy Donovan, two expert witnesses from Washington, D.C., and the ambulance

-3-

attendant who answered the emergency call at the Bier residence. One of the experts testified to the slight force necessary to discharge a cocked .357 magnum revolver and that the handgun fired at a distance of one foot produced a powder dispersal pattern of four to five inches in diameter. Exhibits revealed a four-inch dispersal pattern on Mrs. Bier's neck. The other expert witness reported the results of the hand swab analysis conducted in Washington, D.C. He could not determine who held the gun when it fired.

Defendant testified on his own behalf. He was a career Air Force Sergeant and the father of three minor children by Mrs. Bier. He stated on direct examination, "I don't know if I made her hands squeeze the trigger or if she squeezed the trigger, or how it happened." On cross-examination he admitted that he was aware of his wife's intoxicated condition and should have realized the danger involved.

During defendant's testimony, defense counsel attempted to show through defendant's testimony and diagrams that the angle of the bullet's path was such as to preclude any possibility that defendant held the gun when it discharged. The County Attorney objected to this line of questioning on the ground that evidence relating to the bullet's angle was a technical subject requiring the testimony of an expert. Following an intense exchange between court and counsel, the court ruled that all evidence relating to bullet's angle would be excluded as a technical subject admissible only through expert testimony.

Defendant raises five issues for our review:

(1) Whether the facts presented preclude a finding of negligent homicide as a matter of law.

(2) Whether the District Court abused its discretion by denying defendant's motion for a jury view of the mobile home in which the shooting occurred.

(3) Whether the trial judge's statements to the jury that defendant's demonstrative evidence was "purely his say-so" and "purely his concoction" require reversal.

(4) Whether defendant's testimony as to the angle of the bullet hole was properly excluded as a subject requiring expert testimony.

(5) Whether the prosecutor's statement in closing argument that it "does not believe that Mrs. Bier shot herself" constitutes reversible error.

Defendant contends the State failed to prove the required mental state and causation elements for a prima facie case of negligent homicide. Concerning the mental element, defendant argues that his conduct did not evidence a conscious disregard for his wife's life. Negligent homicide is defined by statute as follows:

> "(1) Criminal homicide constitutes negligent homicide when it is committed negligently.
>
> "(2) A person convicted of negligent homicide shall be imprisoned in the state prison for any term not to exceed ten (10) years." Section 95-4-104, R.C.M. 1947, now section 45-5-104 MCA.

Negligence is defined as follows:

> ". . . [A] person acts negligently
> with respect to a result or to a cir-
> cumstance described by a statute defining
> an offense when he consciously disregards
> a risk that the result will occur or that
> the circumstance exists or if he disregards
> a risk of which he should be aware that the
> result will occur or that the circumstance
> exists. The risk must be of such a nature
> and degree that to disregard it involves a
> gross deviation from the standard of conduct
> that a reasonable person would observe in
> the actor's situation. Gross deviation means
> a deviation that is considerably greater than
> lack of ordinary care. Relevant terms such
> as 'negligent' and 'with negligence' have the
> same meaning." (Emphasis added.) Section
> 94-2-101(31), R.C.M. 1947, now section 45-2-101
> (31) MCA.

In State v. Kirkaldie (1978), _____ Mont. _____, 587 P.2d 1298, 1304, 35 St.Rep. 1532, 1538, this Court explained that "[u]nlike deliberate homicide, which requires that the offense be committed purposely or knowingly, negligent homicide does not require such purpose or knowledge. Negligent homicide only requires a gross deviation from a reasonable standard of care." A gross deviation under the statutory definition is analogous to gross negligence in the law of torts. Although somewhat nebulous in concept, gross negligence is generally considered to fall short of a reckless disregard for consequences and is said to differ from ordinary negligence only in degree, not in kind. See, Prosser, Law of Torts, 183-84 (4th Ed. 1971). Here, defendant's conduct in pulling out, cocking and throwing a loaded gun within reach of his intoxicated wife clearly qualifies as a gross deviation giving rise to criminal culpability.

Defendant also contends he should not be held responsible to have foreseen his wife's alleged suicide attempt. Generally, where a crime is based on some form of negligence the State must show not only that defendant's negligent conduct was the "cause in fact" of the victim's death, but also that

-6-

the victim was foreseeably endangered, in a manner which was foreseeable and to a degree of harm which was foreseeable. LaFave and Scott, Criminal Law §78, p. 588. Clearly, the risk created by defendant's conduct under the circumstances (that in a highly intoxicated state his wife would shoot either the defendant or herself), was a foreseeable risk. Indeed, he challenged her to use the gun.

Next, defendant contends that it was an abuse and discretion for the court to deny his motion for a jury view of the trailer. Section 95-1912, R.C.M. 1947, now section 46-16-502 MCA, provides in part that a jury view is appropriate "[w]hen the court deems it proper." This Court will not interfere with the District Court's discretion in granting or refusing jury view except in a case of manifest abuse. State v. Allison (1948), 122 Mont. 120, 142, 199 P.2d 279, 292. Defendant argues that jury view was necessary due to the complexity and three dimensional quality of his bullet angle evidence. He claims prejudice in the deprivation of this opportunity to corroborate his testimony as to how the shooting occurred. We find no such prejudice. Defendant's testimony as to how the gun fired was, with or without corroboration, sufficient credible evidence for the jury to find guilt of negligent homicide. The court's denial of a jury view was not, therefore, an abuse of discretion.

Defendant alleges reversible error in the trial judge's statements to the jury that defendant's demonstrative evidence was "purely his say-so" and "purely his concoction." These statements should be examined in light of the context in which they were made. In developing the circumstances of the shooting, defendant testified that his wife was standing at a particular point in the room when the gun discharged.

-7-

Defense counsel then elicited testimony from the defendant that Deputy Donovan located her at the same point in the room. The following exchange then took place:

"THE COURT: . . . Now, how are you going to place her there?

"COUNSEL: Based on defendant's recollection.

"THE COURT: That's purely his say-so, is it not?

"COUNSEL: No, it's not purely his say-so, Your Honor. First of all, Deputy Sheriff Donovan has testified as to her location.

"THE COURT: He didn't testify where she was standing, did he?

"COUNSEL: Also, Your Honor, we have a photograph of the--

"THE COURT: Do you have a photograph of her standing someplace in that room?

"COUNSEL: No, Your Honor, we have a photograph I believe as introduced by the State, showing the location of the blood, Your Honor, of Mrs.--

"THE COURT: That's after she was laying down.

"COUNSEL: Well, it shows where she was, it approximates where she was standing. I indicate that she fell from--

"THE COURT: You don't know where she was standing.

"COUNSEL: Well, he's testified to everything else to the best of his recollection.

"THE COURT: That's correct. It's understood clearly that this is what he says.

"COUNTY ATTORNEY: Well, I'll have a continuing objection, Your Honor. I think it's expertise testimony, and it needs expert testimony.

"THE COURT: Yes, it's purely his concoction."

Defendant contends the court's statements, "purely his say-so" and "purely his concoction" were in violation of Rule 614(b), Mont.R.Evid., which proscribes comment on the evidence by a trial judge, and that these statements

effectively denied defendant's right to a fair trial. The State argues that defendant's failure to object at trial precludes the assertion of error on appeal. State v. Jensen (1969), 153 Mont. 233, 236, 455 P.2d 631, 632-33. We agree. We note moreover that the judge's statements were not directed at defendant's credibility. In the context in which the statements were made, it is clear they were intended to clarify that defendant's testimony on where his wife was standing was based exclusively upon defendant's recollection. Although the words "concoction" and "say-so" were not a good choice of words, we do not see how the substantial rights of the defendant were affected by their utterance.

Defendant also takes issue with the District Court's ruling that all evidence relating to bullet angles should be excluded as a technical subject requiring expert testimony. Defendant believes the angle evidence was not too complex to be grasped by the average mind of a juror. The State maintains that it was too complex.

Before the enactment of the Montana Rules of Evidence, effective July 1, 1977, the necessity for expert testimony arose where the proffered evidence was beyond the ordinary range of normal intelligence or common knowledge. 31 Am.Jur.2d Expert and Opinion Evidence §§2-4; Wibaux Realty Co. v. N. Pac. Ry. Co. (1935), 101 Mont. 126, 139, 54 P.2d 1175, 1181. However, Rule 701, Mont.R. Evid. changed this rule, and it applies to the instant case. Rule 701 permits lay opinion so long as rationally based on perceived facts and helpful to an understanding of testimony or facts. Cross-examination in the normal case is considered to sufficiently safeguard the testimony from infirmities. See, Clark, Montana Rules of Evidence, 39 Mont.L.Rev. 79, 126-28 (1978). In the

context of this case, the court's exclusion of testimony on bullet angles was harmless error as it did not affect the substantial rights of the defendant. State v. Armstrong (1977), _____ Mont. _____, 562 P.2d 1129, 1132, 34 St.Rep. 213, 216; Section 95-2425, R.C.M. 1947, now section 46-20-702 MCA.

Here, defendant claims prejudice because he was not permitted to corroborate his testimony on how the gun discharged and thereby exclude the possibility that he might have pulled the trigger himself. Defendant was on trial for negligent homicide, not deliberate or mitigated deliberate homicide. The conceded fact that he threw the cocked, loaded firearm within reach of his intoxicated wife, challenged her to use it, and allowed her to take the gun off the bed was a sufficient basis for the jury to predicate guilt of negligent homicide. Defendant disregarded the risk of which he should have been aware, that his wife in her intoxicated state might shoot herself. This deviation was "considerably greater than [a] lack of ordinary care." Section 94-2-101(31), R.C.M. 1947, now section 45-1-101(31) MCA. Thus, defendant's own testimony was sufficient for conviction of negligent homicide. Accordingly, he was not prejudiced by any inference that he may have held the gun when it discharged.

Last, the defendant contends the prosecutor made improper remarks during his closing arguments that could lead a jury to believe the State had even more evidence against the defendant than what was produced at trial. The prosecutor's statement was, "the State does not believe that Mrs. Bier shot herself. If the State believed that, it wouldn't be here." The inference which defendant wants this Court to adopt is far too speculative to constitute reversible error. This is not a case where the prosecutor expressed a personal opinion on the credibility of

-10-

a criminal defendant. See, State v. Musgrove (1978),

_____ Mont. _____, 582 P.2d 1246, 1252, 35 St.Rep. 1179,

1186. We note moreover, that defendant did not object to

this statement when made, and under the facts of this case

he is deemed to have waived any objection to the statement.

Jensen, supra.

The District Court judgment is affirmed.

_____
                        Justice


We Concur:

_____
       Chief Justice

_____

_____

_____
       Justices