No. 88-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

THE STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

PATRICK MARK TRACY,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the First Judicial District,
                In and for the County of Lewis & Clark,
                The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
        Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Paul D. Johnson, Assistant Attorney General, Helena
        Mike McGrath, County Attorney, Helena, Montana
        Leo Gallagher, Deputy County Attorney, Helena

_____

Submitted on Briefs: Aug. 4, 1988

Decided: September 13, 1988

Filed: **SEP 1 3 1988'**

_Ethel M. Harrison_

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Patrick Mark Tracy appeals from a judgment of the District Court of the First Judicial District, Lewis and Clark County. The judgment was entered pursuant to a jury verdict finding Tracy guilty of the crime of theft (common scheme), a felony. We affirm.

Tracy presents two issues for review:

1. Whether the evidence was sufficient to sustain the jury's verdict convicting Tracy of felony theft (common scheme).

2. Whether the District Court properly imposed a minimum 10-year sentence on Tracy as a persistent felony offender under § 46-18-502(2), MCA.

A summary of the facts is as follows: Tracy was hired as a janitor by Universal Floor Maintenance on September 8, 1987. Part of his job was to clean the Thriftway North store in Helena. A manager and checker at the store, Bob Day, testified at trial that on the evening of September 27, 1987, Tracy cashed over 30 winning Montana lottery tickets at Day's checkstand and another checkstand.

The fact that Tracy cashed so many winning tickets on the same day and the fact that he did so in separate transactions struck Day as odd. He notified his employer, Thriftway President Frank Capps, about his concern. Capps in turn contacted Montana State Lottery Security Director John Onstad. Onstad also received reports that Tracy had cashed 30 other winning tickets at State Lottery Headquarters as of September 29, 1987, all of which were stamped "Thriftway North."

Capps and Onstad investigated. They began keeping track of the numbers on the beginning and ending lottery tickets in

the store's dispensers at the end of each business day. The numbers were then rechecked each morning when the store opened to see if any tickets were missing. They also began nighttime surveillance of the store when janitors would be working.

On the evening of October 3, 1987, Capps and Onstad hid themselves in the store and observed Tracy as he arrived for work. After store personnel had left, Tracy came to the front of the store and appeared to wave at someone outside the store. He then took a shopping cart to the cigarette rack and loaded it with an estimated 50-70 cartons of cigarettes. Onstad took a photograph of Tracy while he was loading the cigarettes onto the cart. Tracy took the cart-load of cigarettes to the back of the store, and the two hidden men heard it pass through the swinging metal doors that separate the shopping area from storage areas in the rear of the store. A few minutes later, Tracy returned with the cart, which was then empty.

Tracy then began to go about his work. While he was doing so, Capps went to the rear of the store to look for the cigarettes. He was unable to find them, and returned to his hiding place. A short time later, the two men observed Tracy removing lottery tickets from the dispensers and placing them inside his pants. He then turned out the lights and left the store.

Capps and Onstad left their hiding place and intercepted Tracy. They brought him back into the store and notified the police. A Helena police officer testified that when he arrived, he searched Tracy and found two bundles of lottery tickets (a total of 213 tickets) stuffed down the front of his pants. A search of the rear of the store at that point also failed to reveal the missing cigarettes. Tracy was then placed under arrest. Subsequent searches of the store for

3

the missing cigarettes were likewise unsuccessful, but Capps did discover that the locking mechanism on one of the rear doors could be manipulated to enable someone to open it far enough to pass items outside.

Onstad testified that lottery tickets are sold to merchants for 95¢ apiece and resold for one dollar. The tickets found on Tracy's person thus had a wholesale value of $202.35, and a retail value of $213.00. Capps testified that the missing cigarettes had a wholesale value of $576.20, and a retail value of $634.10. Capps also testified that since Tracy's arrest, Thriftway had experienced no problems with lottery tickets.

The jury returned a verdict of guilty on December 2, 1987. At the sentencing hearing held January 20, 1988, Tracy was sentenced to ten years in prison for felony theft and 50 years of imprisonment as a persistent felony offender, with 40 years of that sentence suspended. This appeal followed.

I.

Tracy was charged under § 45-6-301, MCA. Under § 45-6-301(6), MCA, theft is a felony if the value of the property involved is at least $300. Tracy admits to being guilty of misdemeanor theft in connection with the lottery tickets found on him when he was arrested. However, he argues that the evidence was insufficient to prove that he exercised control over other lottery tickets and cigarettes of sufficient value to constitute a felony. He argues that the evidence introduced at trial connecting him to the theft of these additional items was based on "conjecture, probability or suspicion."

The test applied by this Court to determine whether the evidence is sufficient to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have

4

found the essential elements of the crime beyond a reasonable doubt. State v. McHugh (Mont. 1985), 697 P.2d 466, 42 St.Rep. 371. If the evidence conflicts, it is for the trier of fact to determine which evidence is dispositive. State v. Oman (Mont. 1985), 707 P.2d 1117, 42 St.Rep. 1565.

The statutory definition of theft used in charging Tracy reads as follows:

> (1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
> ...
> (c) uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

Section 45-6-301(1)(c), MCA. In addition to the 213 lottery tickets found on Tracy's person, the record contains testimony by two witnesses that Tracy cashed a total of 64 tickets marked "Thriftway North" under circumstances that aroused their suspicion. Tracy was employed as a night janitor at the store when he cashed those tickets. Capps and Onstad testified to having observed Tracy removing lottery tickets from store dispensers while in the store for the purpose of cleaning. Capps further testified that his audit showed tickets with a total value of $1,000 to be missing, and that after Tracy's arrest, the ticket thefts ceased.

Capps and Onstad also testified to having observed Tracy remove between 50 and 70 cartons of cigarettes from a rack at the front of the store. Onstad photographed Tracy in the course of this activity. Capps testified that Tracy did not have permission to exercise control over the cigarettes. Both men testified that when Tracy returned from the storage area at the back of the store, the shopping cart into which he had placed the cigarettes was empty. Both men also

5

testified that repeated searches failed to locate the cigarettes. The value of the cigarettes was placed at over $500.

From this evidence, a reasonable trier of fact could conclude that Tracy obtained unauthorized control over property valued at over $300 belonging to Thriftway, and concealed or used it knowing that his actions would deprive Triftway of the property. We conclude the evidence introduced at trial was sufficient to sustain Tracy's conviction.

## II.

Tracy also argues that he was improperly sentenced as a persistent felony offender. Tracy admits that he was properly designated a persistent felony offender, but disputes the court's imposition of a 50-year sentence with 40 years suspended. Section 46-18-502, MCA, provides the criteria for sentencing a persistent felony offender:

> (1) Except as provided in subsection (2), a persistent felony offender shall be imprisoned in the state prison for a term of not less that 5 years or more than 100 years or shall be fined an amount not to exceed $50,000, or both, if he was 21 years of age or older at the time of the commission of the present offense.
> (2) If the offender was a persistent felony offender, as defined in 46-18-501, at the time of his previous felony conviction ... he shall be imprisoned in the state prison for a term of not less than 10 years or more than 100 years or shall be fined an amount not to exceed $50,000, or both.

According to Tracy, the court incorrectly based its sentence on subsection (2) of the statute. Tracy argues the court's sentence amounts to imposing the minimum of 10 years for a defendant who was a persistent felony offender at the time of his previous conviction. Tracy was not designated a persistent felony offender in his previous conviction, and he

6

argues that he should have received a sentence of only 5 years under subsection (1).

The State counters that Tracy could have been designated a persistent felony offender in his previous conviction based on his record at that time. The State argues that the language of the statute does not require that the defendant actually be designated a persistent felony offender in his previous conviction in order to come under subsection (2).

A judge is vested with wide discretion when imposing a sentence on a convicted defendant. If the sentence imposed is within the limits provided by statute, it is not an abuse of discretion. State v. Garrido (Mont. 1981), 621 P.2d 1105, 38 St.Rep. 78. Section 46-18-502(1), MCA, grants the judge discretion to sentence a persistent felony offender to not less than 5 or more than 100 years in prison. The sentence imposed by the judge in this case is within the range authorized by the statute. The judge did not abuse his discretion in imposing a 50-year sentence with 40 years suspended based on Tracy's designation as a persistent felony offender.

We affirm the decision of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

7