No. 89-93

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

WILLIAM MARTIN HIBBS,

       Defendant and Appellant.

---

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Deirdre Caughlan; Dunlap & Caughlan, Butte, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Kathy Seeley, Asst. Atty. General, Helena
        Robert M. McCarthy, County Attorney, Butte, Montana
        Brad Newman, Deputy County Atty., Butte

---

Submitted on Briefs: Aug. 10, 1989

Decided: September 26, 1989

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

A jury empaneled in the District Court of the Second Judicial District, Silver Bow County, found William Martin Hibbs, defendant, guilty under § 45-5-502(1) and (3), MCA, of three counts of sexual assault. The District Court sentenced Hibbs to twenty years in the Montana State Prison on each count to be served consecutively. He was also found to be a persistent felony offender under § 46-18-501(1) and (2), MCA, and was sentenced to fifteen years in the Montana State Prison to be served consecutively with the term imposed on count three. Hibbs appeals. We affirm.

The following issues are raised on appeal:

1. Whether the District Court abused its discretion when it offered and admitted an exhibit on its own motion.

2. Whether the District Court properly allowed the prosecution to use leading questions with two child witnesses, ages six and seven, on direct examination.

3. Whether the District Court erred in allowing three prosecution witnesses to testify to out-of-court statements made to them by four child witnesses.

On July 13, 1988, a six-year-old girl, referred to as Misty, told her mother that she, her sister, referred to as April, age ten, and two neighbor girls, referred to as Carol, age six, and Carol's sister, referred to as Crystal, age seven, had been sexually assaulted the previous day at the Hibbs' residence. April's mother reported the incident to the police.

On July 14, 1988, a social worker, employed by the Department of Family Services, Butte, Montana, interviewed

the four girls in which the girls claimed that Hibbs forced them to touch his penis with their hands and mouths and that he touched their vaginas with his hands. The four girls also claimed that Hibbs prevented them from leaving his residence by wedging knives into his door which prevented it from being opened. The four girls stated that Hibbs gave them some change after sexual contact had ceased. Two of the girls claimed that Hibbs warned them not to tell their parents about the contact or the girls would go to jail. Another girl claimed that Hibbs threatened to kill her if she told her parents about the contact.

Also, on July 14, 1988, a Butte police detective took a voluntary, recorded statement from Hibbs after Hibbs was advised of his Miranda rights and after he signed and initialed a waiver form acknowledging his rights. Hibbs stated that he was 58 years old. He further stated that while he did have sexual contact with several juvenile girls from the neighborhood, it was the girls who initiated the contact by unzipping his pants and then fondling and sucking his penis. Hibbs claimed that this occurred while he was asleep and incapacitated by alcohol. At trial, Hibbs testified that as soon as he became aware of what was happening, he ran into the bathroom and Crystal followed him and demanded money.

On August 4, 1988, Hibbs was charged by information with four counts of sexual assault committed against four juveniles in violation of § 45-5-502(1) and (3), MCA. On January 3, 1989, a jury trial commenced. Witnesses for the prosecution included the four girls, April, Misty, Crystal and Carol, their mothers, and Terri Waldorf, a social worker who interviewed the children following the reported assaults.

On January 4, 1989, the jury found Hibbs guilty on three of the four counts of sexual assault. On February 3, 1989,

Hibbs was sentenced to twenty years in the Montana State Prison on each count to be served consecutively and fifteeen years in the Montana State Prison as a persistent felony offender to be served consecutively with count three. Hibbs was designated a dangerous offender for purposes of parole eligibility under § 46-18-404, MCA, and was given credit for time served.

The first issue raised on appeal is whether the District Court abused its discretion when it offered and admitted an exhibit on its own motion. Specifically, the court ordered the Miranda waiver form admitted into evidence after the prosecution had fully cross-examined Hibbs on the document. The prosecutor stated that he did not intend to enter the form into evidence.

Hibbs argues that by ordering the admission of the form into evidence, the court, in effect, was commenting on the evidence in violation of Rule 614(b), M.R.Evid., which provides:

> The court may interrogate witnesses, whether called by itself or a party; provided, however, that in trials before a jury, the court's questioning must be cautiously guarded so as not to constitute express or implied comment.

It is true that under the rule, the court may <u>examine witnesses</u> to fully elicit or clarify facts. See State v. Martin (Mont. 1987), 736 P.2d 477, 44 St.Rep. 804; State v. Bier (1979), 181 Mont. 27, 591 P.2d 1115. The authority for the court to call or examine witnesses is discretionary and will not be disturbed absent a showing of abuse of discretion or manifest prejudice. State v. Hart (1981), 625 P.2d 21.

Nonetheless, the issue raised is <u>not</u> the examination of witnesses but the actual admission of an exhibit by the court's own order. There is no provision under Rule 614, M.R.Evid., nor anywhere in Montana law, that directly permits

the court to offer its own exhibits into evidence. Here, the exhibit had been read into evidence in full to the jury. It could hardly constitute eror.

If it were error, it was harmless. Section 46-20-701, MCA, provides in part:

> No cause shall be reversed by reason of any error committed by the trial court against the appellant unless the record shows that the error was prejudicial.

Under State v. Gray (1983), 207 Mont. 261, 268, 673 P.2d 1262, 1266, we stated:

> The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the conviction. (Citations omitted.)

The next issue raised on appeal is whether the District Court properly allowed the prosecution to use leading questions with two child witnesses, ages six and seven, on direct examination.

Rule 611(c), M.R.Evid., provides in pertinent part:

> Leading questions should not be used on the direct examination of a witness except as necessary to develop his testimony.

Hibbs objected to the leading nature of the prosecution's direct examination of two child victims and argues that the prosecution failed to establish that leading questions were necessary to develop the witnesses' testimony. However, in Bailey v. Bailey (1979), 184 Mont. 418, 603 P.2d 259, 261, this Court set forth an exception to the general rule against leading questions on direct examination where a child witness is involved. The rationale behind the exception is that questioning a child is a difficult task. See State v. Eiler (Mont. 1988), 762 P.2d 210, 45 St.Rep. 1710; State v. Howie (Mont. 1987), 744 P.2d 156, 44 St.Rep.

1711.  As this Court stated in Eiler, 762 P.2d at 215 whether or not leading questions will be allowed is a matter for the trial court's discretion.  See also Bailey, 603 P.2d at 261. The District Court need not make express findings that leading questions are necessary.  We hold that the questioning was proper.

The last issue raised on appeal is whether the District Court erred in allowing three prosecution witnesses to testify as to out-of-court statements made to them by four child witnesses.

In this case, after the victims testified, the prosecution called three witnesses, Chrystal's mother, April and Misty's mother and a social worker, to testify.  The three witnesses testified as to what the children had told them concerning their activities with Hibbs.  The testimony of the three witnesses was consistent with the testimony of the four girls.  Hibbs objected to the testimony as hearsay.

Rule 801(d)(1)(B), M.R.Evid., provides in part:

A statement is not hearsay if:

> . . . consistent with [the witnesses] testimony and is offered to rebut an express or implied charge against him of subsequent fabrication, improper influence or motive.

Hibbs asserts that because the credibility of the child witnesses was never attacked at trial, the rule is inapplicable.  However, as the prosecution notes, defense counsel placed the credibility of the child victim's in issue during opening by stating:

> The issue . . . is one of truthfulness.  It is one of credibility . . . [the prosecution] has told you that he will call certain witnesses . . . [that] may have some ulterior motives of testifying against Bill Hibbs. . . . Be sure . . . [the children] know the difference between truth and

fantasy; between the truth and a lie.  (Emphasis ours.)

Further, during cross-examination, defense counsel questioned the children repeatedly over whether they knew what a lie was and whether they had ever lied.  In asking such questions, defense counsel placed the credibility of the child witnesses in issue.

In State v. Mackie (1981), 622 P.2d 673, 676, where similar statements were allowed into evidence, we held:

> These circumstances clearly qualify the counselor's testimony as nonhearsay under Rule 801(d)(1)(B). . . . The quoted declarant (rape victim) testified at trial, she was subject to cross-examination concerning her statement, the counselor's statement is consistent with the victim's testimony, and it rebuts an implied charge of fabrication.

See also State v. Anderson (1984), 211 Mont. 272, 289-290, 686 P.2d 193, 202-203.  Here, it was proper for the prosecution to rebut the attack on the credibility of the children under Rule 801(d)(1)(B), M.R.Evid., by calling witnesses to testify as to prior consistent statements of the children.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 7 -

# CORRECTION

Date 10/24/89

EDITORIAL DEPARTMENT
West Publishing Co., P.O. Box 3526, St. Paul, MN 55165

Please make the following correction in the opinion in the case of:

Title: No. (89-93) State v. Hibbs

Vol. 46 S.Rptr. _____ Page 1708 - 1709

In first/second column, line _____ from top/bottom.

P. 1708

Hibbs objected to the leading ...
As this court stated in Eiler,
762 P.2d at 215 (?)

~~should read~~

AND

P. 1709

(NO NEW PARAGRAPH) See also State v. Anderson...

Signed Pam Chapman Otto

The expense of making changes is such that we cannot undertake it for changes in typographical style or spacing.

West Publishing Co.

N182d