No. 88-595

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

    -vs-

WARREN DEAN BROWN,

        Defendant and Appellant.

FILED
'89 OCT 24 AM 10 18
ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM:  District Court of the First Judicial District,
              In and for the County of Lewis & Clark,
              The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Randi Hood, Public Defender, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        George Schunk, Asst. Atty. General, Helena
        Mike McGrath, County Attorney; Carolyn A. Clemens,
        Deputy County Atty., Helena, Montana

Submitted on Briefs:   Sept. 21, 1989

Decided:   October 24, 1989

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a conviction of felony assault. Defendant appeals a judgment of the First Judicial District of the State of Montana, Lewis and Clark County, contending that the evidence presented to the jury is insufficient to sustain the jury's verdict finding him guilty of felony assault. We affirm the the trial court's judgment.

On March 7, 1988, Kathy Brown, the wife of defendant Warren Brown, had asked the defendant to watch their two children---Amber, age 3, and Crystal, age 1---for the day. The couple had been separated for approximately one month.

Kathy was scheduled to return for the children around 5:00 p.m. but did not return until approximately 6:30 p.m. Shortly after her arrival, the couple began arguing. The testimony conflicts as to the nature of this argument. Kathy testified that during the argument the defendant slapped her in the face and hit her in the nose with his fist causing her nose to bleed. Kathy then testified that the defendant forced her to clean the blood from the floor and held his pocketknife to her neck while she was cleaning. He then elongated a wire coat hanger, wrapped it around her wrist, and led her around by it.

According to Kathy's testimony, the defendant then took her in the bedroom, removed a .22 caliber pistol from a cardboard file and loaded it. When he next told her to dress the children to go for a ride, she hesitated going to the car, and the defendant pointed the gun at her side. Kathy testified that the family went outside the apartment and she began screaming and resisting her husband. She testified that the defendant then struck her two or three times with the gun, at least once on the forehead and then on the top of her head. She dropped Crystal, whom she was carrying at the

2

time, and fell to the ground. The defendant got on top of her, attempting to put one hand over her mouth and choke her with the other.

Kathy then testified that she managed to get free from the defendant, grab their oldest child and flee to a neighbor's apartment. As she fled she saw the defendant pick up Crystal, point the gun at her side and return to his apartment.

Kathy's testimony then indicated that the neighbor, Tammy Stoke's, assisted with Kathy's bleeding and called the police. Upon arriving, the police treated the disturbance as a hostage situation. The officers unsuccessfully attempted to contact the defendant in the apartment by pounding on the door, using a bullhorn, shining spotlights in the windows, and using a listening device to pick up sounds within the apartment. At 1:00 a.m. officers entered the apartment, finding the defendant and the child sleeping in the bedroom. The defendant was placed under arrest. When asked by officer's where the gun was he directed them to the .22 pistol located in the file cabinet.

Meanwhile, Kathy Brown was taken to the emergency room of St. Peter's Hospital in Helena and examined by Dr. James Burkholder. She informed the doctor that she had been struck on the forehead and top of the head with the butt of a pistol and punched in the nose. Dr. Burkholder testified that his examination revealed a broken nose, a superficial laceration on the forehead consistent with being struck by the butt of a gun, and linear abrasions on her left wrist consistent with being drug by a coat hanger.

At trial, Melissa Templin, an eight year old neighbor child testified that she heard a scream, looked out her window and saw Kathy on the ground with the defendant over her. She saw Kathy get up and flee from the defendant but

3

did not see the defendant holding anything other than Crystal.

Julie Long, a forensic serologist from the Montana State Crime Laboratory testified that the .22 caliber pistol had an amount of human blood on the barrel.

In his testimony, the defendant acknowledged having an argument with his wife. He denied slapping her, putting a knife to her throat, leading her around his apartment with a coathanger, arming himself with his pistol, leaving the apartment with his family, and pistol-whipping his wife. Regarding Kathy's broken nose, the defendant testified that during the course of the argument he reached for her to try to get by her and due to the slickness of the material of her blouse, her nose might have struck his forehead. He did acknowledge that she had a bloody nose, and testified that he assisted her in stopping the bleeding.

The defendant testified that after the argument abated Kathy took Amber and left to visit a neighbor. He then put Crystal to sleep and went to sleep himself. Because of a hearing impairment he was unable to hear and did not respond to the police' efforts to contact him within the apartment. He testified that he willingly gave the police the pistol, which he was currently refurbishing and which lacked part of the firing mechanism.

Additionally, Arnold Garay, an acquaintance of both the defendant and Kathy Brown testified that Kathy frequently started arguments with the defendant, had once threatened the defendant with a knife, and often tried to claw his face and eyes. Mr. Garay also testified that Kathy had a poor reputation for truthfulness.

The sole issue raised by the defendant on appeal is whether the evidence at trial was sufficient to sustain the conviction for felony assault. Defendant contends that the

4

evidence is sufficient at most to sustain a conviction for domestic abuse.

A person commits the offense of domestic abuse if he (1) purposely or knowingly causes bodily injury to a family member or household member; or (2) purposely or knowingly causes reasonable apprehension of bodily injury in a family member or household member. Section 45-5-206(1), MCA. The purpose to cause reasonable apprehension or the knowledge that reasonable apprehension would be caused shall be presumed in any case in which a person knowingly points a firearm at or in the direction of a family member or household member, whether or not the offender believes the firearm to be loaded. Section 45-5-206(1), MCA. To convict the defendant of the offense of felony assault the jury was required to find that the defendant purposely or knowingly caused (1) bodily injury to Kathy with a weapon, or (2) reasonable apprehension in Kathy of serious bodily injury by use of a weapon. Section 45-5-202(2), MCA. If, in fact, the defendant purposely or knowingly caused serious bodily injury to the victim, the offense would rise to the level of aggravated assault. Section 45-5-202(1), MCA.

Thus, in cases where bodily injury is inflicted to a family or household member, the distinction between felony assault and domestic abuse is that felony assault requires use of a weapon. In cases involving reasonable apprehension of bodily injury in a family or household member, felony assault, in comparison to domestic abuse, requires two additional elements: use of a weapon and that the bodily injury apprehended is of a serious nature. Sections 45-5-206, 45-5-202, MCA.

Here, the State offered proof of felony assault in that defendant caused bodily injury with a weapon by striking the victim with a handgun. The State's proof could also

5

establish the elements of felony assault if the jury found it reasonable for Kathy to apprehend that the defendant might shoot her or stab her with his pocketknife.

The well established standard of review regarding sufficiency of the evidence is: "Whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Tracy (Mont. 1988), 761 P.2d 398, 400, 45 St.Rep. 1705, 1707; State v. Cox (Mont. 1987), 733 P.2d 1307, 1309, 44 St.Rep. 496, 498. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573. "The weight of the evidence and credibility of the witnesses is exclusively the province of the trier of fact. If the evidence conflicts, it is within the province of the trier of fact to determine which shall prevail." State v. Oman (1985), 218 Mont. 260, 265, 707 P.2d 1117, 1120.

The issue of the sufficiency of the evidence in this case is raised because of the conflict between the testimony of the defendant and the victim. With respect to this conflict, defendant's appeal is analogous to the appeal in State v. Roberts (Mont. 1981), 633 P.2d 1214, 38 St.Rep. 1551, where we said:

> The issue of sufficiency of the evidence boiled down to the credibility of the State's witnesses vis-a-vis the defendant's testimony. The jury by its verdict resolved this conflict in favor of the State.

Roberts, 633 P.2d at 1218, 38 St.Rep. at 1556. Here the jury weighed the credibility of the conflicting evidence and chose

6

to believe the State's witnesses, which clearly established with substantial evidence the essential elements of felony assault.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices