No. 90-047

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,
    Plaintiff and Respondent,
-vs-
SAMUEL E. MEDINA,
    Defendant and Appellant.



FILED

SEP 25 1990

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Deirdre Caughlan, Dunlap & Caughlan, Butte, Montana

      For Respondent:

      Marc Racicot, Attorney General, Elizabeth Baker,
      Assistant Attorney General, Helena, Montana; Robert
      M. McCarthy, County Attorney, Eileen Joyce-Smith,
      Deputy County Attorney, Silver Bow County, Butte,
      Montana

Submitted:  May 30, 1990

Decided:  September 25, 1990

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Defendant Samuel E. Medina appeals from the jury verdict rendered in the District Court of the Second Judicial District, Silver Bow County, which found him guilty of sexual assault. We affirm.

The issues on appeal are:

1) Whether the District Court erred in admitting evidence of defendant's 1984 conviction of sexual assault.

2) Whether the District Court erred in admitting evidence of the victim's prior consistent statements.

3) Whether appellant's conviction is supported by sufficient evidence.

In early June, 1989, Carol Wold, psychologist for the Butte public school system, was visited by the defendant's 15-year-old daughter, CM, together with two of her friends. The girls wanted to discuss a hypothetical situation in which a girl is sexually abused by her father. Wold told the girls that such abuse should be reported. The girls returned to Wold's office shortly thereafter, and CM revealed that she had been sexually abused by her father. Terry Waldorf of the Department of Family Services was contacted immediately and interviewed CM that day. CM was interviewed several days later by Butte-Silver Bow Detective Thomas Gallagher and related the same account of sexual abuse to him.

Defendant was charged with one count of sexual assault, a felony, in violation of § 45-5-502(1) and (3), MCA. Defendant

2

entered a plea of not guilty to the charge and was released on bail.

Thereafter, the State filed a notice of intent to introduce evidence of other crimes or acts. The information was also amended to expand the dates of commission of the offense to the time period between May 1987 and May 1989.

Defendant filed a brief opposing the introduction of other crimes evidence. Prior to the commencement of trial on November 7, 1989, the court ruled in open court that introduction of other crimes evidence would be permitted.

Trial was held on November 7 and 8, 1989. During trial, CM testified that on May 10, 1989, while her mother was out playing bingo and her sister was at night school, the defendant approached her from behind, put his hand down her pants and inserted his finger into her vagina; he then turned her around, lifted her shirt and fondled her breasts. She also testified that this was not the first time that her father had touched her sexually. CM stated that on an earlier occasion in the family home, when CM had told her father to "shut up," he turned and bit her on the breast. CM related this story to her friend, April Baker, who testified as to the existence of a red mark on CM's breast. Further, CM testified that in May or June of 1987 her father forced her to perform oral sex on him and to stimulate him with her hand until he ejaculated. Similar incidents occurred every two or three weeks until the last episode in May 1989, which prompted her to tell authorities.

CM also related an experience of similar abuse by her father in 1984 when her family lived in Colorado. On that occasion, defendant took CM from her bedroom in the family home, pulled down her pants, and attempted unsuccessfully to have sexual intercourse with her. CM reported the incident to the police, as a result of which charges were filed and defendant entered a plea of guilty.

On cross-examination, defendant questioned CM about her possible motives for making these allegations against her father and whether she had related this sexual abuse to any members of her family. In response, the State presented testimony from various experts who had spoken with CM about the abuse. These experts included Terry Waldorf, Social Worker for the Department of Family Services.

Defendant and the rest of the family testified that, as a result of defendant's previous conviction and the counseling thereafter received by the family, strict rules and safeguards were imposed in the home. Defendant was never allowed to be alone with either CM or her older sister, Nicole. The family testified that these safeguards were rigidly adhered to. Defendant also testified that the only improper sexual contact between himself and CM had been initiated by CM herself. The entire family testified that CM was a disruptive child. CM's mother testified that, the night before CM reported her father's alleged abuse, she and CM had argued about a boyfriend; CM had angrily told her mother that she would "get [them] all" and said: "It worked before and it will work again."

The jury found defendant guilty of felony sexual assault as charged. Defendant was subsequently sentenced to a 20-year term of imprisonment and designated a nondangerous offender. Defendant filed a timely appeal.

The first issue on appeal is whether the District Court erred in admitting evidence of defendant's 1984 conviction of sexual assault.

The admission of other crimes evidence is governed by Rule 404(b), M.R.Evid., which states:

> (b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Generally, evidence of other crimes, wrongs, or acts is inadmissible to prove that a person "who commits a crime probably has a defect of character [and that] a [person] with such a defect of character is more likely than [people] generally to have committed the act in question." 2 Weinstein's Evidence, § 404[08], page 52 (1990). Other crimes evidence is admissible, however, for other relevant purposes such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b), M.R.Evid. The admission of such evidence is tempered by Rule 403, M.R.Evid., which requires that all evidence, even if relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Rule 403, M.R.Evid.

5

The State must show that the other crimes evidence is relevant in proving the current charge. United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). In this case, the State sought to introduce other crimes evidence of defendant's 1984 sexual assault conviction. To be convicted of sexual assault, defendant must "knowingly" commit the assault. Section 45-5-502(1), MCA. A person acts "knowingly" when he is aware of his conduct or is aware that his conduct created a substantial probability that a circumstance defining an offense would result. Section 45-2-101(33), MCA. Therefore, in this case the State must show that the previous conviction is relevant to prove that defendant was aware that his conduct caused the assault or created circumstances that resulted in the assault.

The State alleged that the prior conviction was relevant to prove that defendant acted "knowingly" by exposing defendant's motive, intent, knowledge, absence of mistake or accident, and consciousness of guilt in participating in the current charge. We hold that the admission of the 1984 conviction is appropriate for the purpose of proving motive, intent, absence of mistake or accident, and knowledge.

The 1984 conviction indicated that defendant "knowingly" participated in the current charge by exposing his prior motive. Knowledge is appropriate to prove that the defendant was aware of his conduct. Also, if the defendant had committed the conduct once before, it is evidence that he knew the consequences that such

6

action would again bring.  Similarly, the previous occurrence of an assault on the same victim indicates that defendant was aware of the consequences of such conduct and that he could not claim that his actions were mistaken.

The relevancy of the other crimes evidence is further supported under the test enumerated in the landmark case of State v. Just, 184 Mont. 262, 602 P.2d 957 (1979).  Compliance with this test also lends additional support to the probative aspects of such evidence.  State v. Eiler, 234 Mont. 38, 762 P.2d 210 (1988).  The four factors involved in the test are as follows:

1.  The similarity of crimes or acts;

2.  nearness in time;

3.  tendency to establish a common scheme, plan or system; and

4.  the probative value of the evidence is not substantially outweighed by the prejudice to the defendant.  (Emphasis in original.)

Just, 602 P.2d at 961.

In considering the first prong of this test, we have previously held that "prior acts need not be identical to the offense committed but be merely of 'sufficient similarity'" in order to comply with this first criteria.  State v. Eiler, 762 P.2d at 216, quoting State v. Tecca, 220 Mont. 68, 714 P.2d 136 (1986).  See State v. T.W., 220 Mont. 280, 715 P.2d 428 (1986), where similarity was established between the first act of defendant in which he got on top of the victim and pressed his erect penis against her buttocks, and the second act of defendant in which he fondled the victim's breasts and pushed his hands into her pants.

7

Defendant's 1984 conviction is sufficiently similar to the current charge. The 1984 conviction involved inappropriate sexual contact with his daughter, CM, who at that time was ten years old. Because defendant's attempt at sexual intercourse was unsuccessful, defendant was convicted of sexual assault. The current charge also involved inappropriate sexual contact by defendant with the same daughter, who was fifteen at the time. Although the activities involved in each situation are not identical, it is inescapable that defendant's conduct on both occasions was similar in that both involved sexual contact between the defendant and the same victim and occurred for purposes of defendant's sexual gratification. We conclude that this meets the first test of similarity of acts.

With regard to nearness in time, each case must be examined in light of its unique set of facts. See State v. Hansen, 187 Mont. 91, 608 P.2d 1083 (1980), where we allowed two and one-half years; State v. Stroud, 210 Mont. 58, 683 P.2d 459 (1984), where we allowed three and one-half years; and State v. T.W., 220 Mont. 280, 715 P.2d 428 (1986), where we allowed four years when the facts indicated that defendant did not have a prior opportunity.

In this case, the three to five year period between the 1984 conviction and the charged crime is near enough in time to be considered probative. Defendant did not have an opportunity to be alone with his daughter, CM, prior to the three years. After defendant's 1984 conviction, strict rules were imposed by the family on the defendant's interaction with his daughters: defendant was never to be alone with either of his daughters; the

daughters were to be together at all times when their mother was gone; and CM's mother, whenever she left the house, would return and question the daughters as to whether everything was alright. In time, these rules were no longer strictly enforced. Defendant began to be left in the home with CM and her two younger brothers. As a result, when the two boys were playing elsewhere in the house, defendant would be alone in a room with CM. Defendant was given an "opportunity" three to five years after the 1984 conviction that did not exist immediately after the conviction. We conclude that the nearness in time portion of the test has been met.

Our next requirement is to determine whether the defendant was acting upon a common scheme, plan, or system at the time of the current charge. A common scheme, plan, or system is indicated by other crimes evidence when, compared with the current charge, the crimes possess a unique similarity which supports a plan to carry out a scheme. Just, 602 P.2d at 961.

The 1984 acts are so similar to the 1989 acts as to indicate that defendant was acting in accordance with a common pattern of behavior. Just, 602 P.2d at 961. This common pattern of behavior is indicated by the following facts: all the acts testified to occurred between the defendant and the same victim; all transpired when defendant was allowed to be alone with the victim; all involved essentially identical behavior by defendant; and all occurred for defendant's sexual gratification. Just, 602 P.2d at 961. See Eiler, 762 P.2d at 216; T.W., 715 P.2d at 430. We conclude that the facts establish a common scheme or plan.

9

The evidence of the 1984 actions meets the first three _Just_ factors and is, therefore, probative. However, in compliance with Rule 403, M.R.Evid., and the fourth _Just_ factor, this probative value must still be balanced against the prejudicial effect this evidence may have on defendant.

Any evidence of other crimes will have prejudicial implications on the defendant. _Just_, 602 P.2d at 961. As a result, this Court adopted certain procedural safeguards to decrease these prejudicial implications. _Just_, 602 P.2d at 963-64. Although these procedural safeguards do alleviate some of the prejudice to defendant, they still do not replace the court's ultimate task of weighing the probative value of the other crimes evidence against its prejudicial effect.

Defendant used the 1984 conviction to support the argument that CM concocted the current charge to be removed from the family home. The defense argued that CM knew from this prior experience that, if she accused defendant of sexual assault, she would be removed from the family home; she, therefore, concocted the story in order to get away from her parents with whom she was angry for the restrictions they imposed upon her relationship with her boyfriend.

Based upon the above discussion, the 1984 conviction was found to be relevant and its probative value outweighed its prejudicial effect. The District Court properly admitted the 1984 conviction into evidence.

10

The second issue on appeal is whether the District Court erred in allowing a prosecution witness to testify as to out-of-court statements made to her by the victim.

During trial, prosecution witness Terry Waldorf testified regarding an interview she had with the victim, CM. Defendant challenges this testimony to the extent that Waldorf repeated statements made to her by CM during this interview. This testimony is admissable under the prior consistent statement exception to the hearsay rule.

Hearsay is defined in Rule 801(c), M.R.Evid., as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Certain out-of-court statements are not considered to be hearsay. Rule 801(d), M.R.Evid. One such example is prior statements made by a witness when: 1) the declarant testifies at trial, and 2) is subject to cross-examination concerning her prior statements; 3) the statements to which the witness testifies must be consistent with the declarant's testimony, and 4) the statement must rebut an actual or implied charge of fabrication. Rule 801(d)(1), M.R.Evid.; State v. Mackie, 191 Mont. 138, 144, 622 P.2d 673, 676 (1981). "An attack on general credibility satisfies the recent fabrication element." State v. Tafoya, 729 P.2d 1371, 1376 (N.M.Ct.App. 1986).

Clearly, the first three factors have been complied with: the declarant, CM, testified at trial; she was subject to cross-examination concerning her statement; and the witness Waldorf's

testimony was consistent with CM's testimony. The defense argues, however, that these consistent statements are still not admissible because they were not being used to rebut an allegation of fabrication, or, if admissible for such purpose, should only have been used during the State's rebuttal and not its case-in-chief.

This Court has previously addressed these arguments in a similar case. In State v. Hibbs, 239 Mont. 308, 780 P.2d 182 (1989), this Court held that the use of prior consistent statements made by the victim and testified to by certain prosecution witnesses would be allowed when defendant had attacked the victim's credibility during opening and cross-examination. These witnesses were allowed to testify after the victim's credibility had been attacked and after the victims themselves had testified. There was no requirement that these witnesses only be allowed to testify during the State's rebuttal.

In this case, defendant attacked CM's credibility during his opening statement and during CM's cross-examination. In his opening statement defendant indicated that the sexual contact alleged by CM "did not happen" and that the defense would "present reasonable doubt" as to the truth of CM's allegations. Further, when CM was cross-examined she was questioned repeatedly about alleged inconsistencies in her statements. These attacks on CM's credibility justify the State's use of prior consistent statements by Waldorf for rebuttal purposes. The State's use of these statements could have occurred at any time after CM had testified.

The third issue on appeal is whether defendant's conviction is supported by sufficient evidence.

The standard of review regarding the sufficiency of the evidence was well established in the case of State v. Brown, 239 Mont. 453, 781 P.2d 281 (1989). This standard of review is:

> Whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Brown, 781 P.2d at 284, quoting State v. Tracy, 233 Mont. 529, 761 P.2d 398 (1988).

Defendant was charged with sexual assault on his daughter, CM. In order to prove defendant's guilt, the State had to establish that defendant knowingly subjected his daughter, CM, a person less than 16 years old and not his spouse, to sexual contact without her consent. Section 45-5-502(1), (3), MCA. Sexual contact is defined in § 45-2-101(60), MCA, as "any touching of the sexual or other intimate parts of the person of another for the purpose of arousing or gratifying the sexual desire of either party."

The uncorroborated testimony of the victim is sufficient to support a conviction of sexual assault provided that such testimony is consistent with other evidence. State v. Howie, 228 Mont. 497, 503, 744 P.2d 156, 159 (1987). In this case, CM testified as to sexual assault by the defendant. Her testimony was consistent with the testimony of other witnesses. The jury weighed her testimony and concluded that she was telling the truth. This testimony is sufficient to support the jury's decision.

13

Defendant claims that even when the evidence is viewed in a light most favorable to the State, such evidence is so fraught with inconsistencies that it is not sufficiently credible to support the verdict. These inconsistencies stem from variations in testimony between CM and other witnesses.

During review, this Court must not decide the weight of the evidence. "If the evidence conflicts, it is within the province of the trier of fact to determine which shall prevail." State v. Brown, 239 Mont. 453, 781 P.2d 281 (1989). In Brown, we addressed a similar situation and stated:

> The issue of sufficiency of the evidence boiled down to the credibility of the State's witnesses vis-a-vis the defendant's testimony. The jury by its verdict resolved this conflict in favor of the State.

Brown, 781 P.2d at 284, quoting State v. Roberts, 633 P.2d 1214, 38 St.Rep. 1551 (Mont. 1981).

The jury in this case, sitting as the trier of fact, weighed the conflicting evidence and chose to believe the State's witnesses. We will not disturb this conclusion.

Affirm.

/s/ William E. Hunt
Justice

We Concur:

/s/ J. A. Turnage
Chief Justice

/s/ John C. Sheehy

14

*John Conway Harrison*

*Marie G. Barr*

*R. C. McDonough*

_____

Justices