No. 97-077

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

BERNARD HUGH OLSON,

Defendant and Appellant.


APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
Honorable Jeffrey Sherlock, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

Jeremy Gersovitz, Public Defender, Helena, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Micheal S.
Wellenstein, Assistant Attorney General, Helena, Montana

Mike McGrath, County Attorney; Carolyn Clemens, Deputy
County Attorney, Helena, Montana


Submitted on Briefs: December 4, 1997

Decided: December 23, 1997

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Bernard Olson appeals from the order and judgment of the First Judicial District Court, Lewis and Clark County, convicting him of three counts of sexual assault. We affirm.

Olson raises the following issues on appeal:

1. Did the District Court abuse its discretion when it determined J.H. was competent to testify?

2. Was there sufficient evidence to support Olson's convictions of sexual assault?

BACKGROUND

In October 1995, Olson, then age 48, traveled to Helena, Montana, for surgery on his varicose veins and stayed at God's Love, Inc., a homeless shelter. While there, he volunteered to arrange donated clothes stored in the basement. God's Love staff did not tell Olson to help fit people for clothing. According to Olson, he was not supposed to be alone with children at the shelter.

W.M.'s mother is the manager of God's Love. After school, W.M.'s mother's husband would drop off W.M., then eight years old, at God's Love. Because God's Love is primarily a men's shelter, W.M.'s mother did not permit her to enter the basement alone. However, W.M. sometimes disregarded this rule.

While driving to God's Love one day, W.M.'s mother's husband overheard W.M. tell her brother that she wondered if the man who touched her in a bad way would be at the shelter. W.M.'s mother learned of the conversation and asked W.M. what had happened at God's Love. W.M. reluctantly told her mother a man had touched her in a bad way. When W.M. described him, there was no question in her mother's mind that W.M. had described Olson. W.M.'s mother contacted the police.

At trial, W.M. recognized Olson as the man who had touched her. W.M. described two instances when he touched her breasts. Once, she was riding a Big Wheel in the basement, and Olson came up to her from behind and rubbed her breasts with both of his hands. Another time in the basement, Olson rubbed W.M.'s breasts when he gave her a dress. W.M.'s mother and her mother's friend were in the basement picking out toys. W.M. testified she could see Olson when he gave her the dress, and the same guy who gave her the dress put his hands on her breasts and rubbed them.

W.M. spoke with Helena Police Officer Debra Drynan, who asked W.M. to draw a picture of what happened. The picture was introduced at trial. W.M. explained her picture depicted Olson coming to her from behind and touching her breasts, and her mother and her mother's friend looking at toys. W.M. testified that after Olson rubbed her breasts, he put her on top of his shoulders and her "mom told him not to do it again," so Olson put her down.

Olson maintained he was never alone with W.M. in the basement, and he would leave when she came down alone. Olson did not remember the Big Wheel incident. He denied sexually assaulting W.M., and when his attorney asked him how he was able to

say that, Olson responded, "To me, none of the girls . . . have breasts.  To me, that is chest.  And I do not find them as sexual objects."  When asked if he ever touched W. M. in the chest or breast area, Olson stated he may have touched her when lifting her or giving her a hug from behind.

At trial, Olson recalled helping W.M. look for a dress.  When his attorney asked why W.M. would state that he rubbed her chest during the dress incident, Olson responded:

I may have given her a hug from behind, just a quick one, two, three, four second hug. . . .  [N]othing real heavy.  Just a quick, gentle, light hug, nothing . . . that I would make somebody feel uncomfortable trying to hold them.

Olson also remembered putting W.M. on his shoulders.  He stated that when he picked W.M. up and put her down his hands were on the sides of her rib cage.  Olson explained his back became fatigued, and he put W.M. on his shoulders to correct it.

T.R., then age eleven, and her family stayed at God's Love.  T.R.'s mother learned a man had been accused of touching a girl at God's Love.  T.R.'s mother spoke with T.R., who became quiet and scared and said a man had touched her breasts when he was showing her how to tie a tie.  When T.R.'s mother questioned whether the touching could have been accidental, T.R. told her it was not.  T.R.'s mother determined Olson was the man who touched T.R. because she was in the basement when Olson taught T.R. how to tie a tie.

T.R. testified that she wanted to learn how to tie a tie, and Olson showed her how.  While teaching her, Olson rubbed her chest in the same manner a person would rub a cat.  T.R. stated that Olson was behind her, and when he rubbed her chest, no one saw him do it.

At trial, Olson recalled the day he had shown T.R. how to tie a tie.  He stood behind T.R. and put a tie around her neck and tied it.  When he showed T.R. how to adjust the tie, he touched her but was not sexually aroused or gratified.  When asked if he may have rubbed T.R.'s breast when tying the tie, Olson answered that a chest is on a girl and a breast is on a woman, and he considered T.R. "a girl, not a woman or even a budding woman[.]"

In late 1995, Laurie and her two daughters, T.H., then age seven, and J.H., then age five, received assistance from God's Love.  While there, they looked for clothes in the basement.  One morning, Olson spoke with T.H. about a dress.  Laurie heard Olson tell T.H. that he would help her try on a dress, and T.H. told Olson "no."  The dress T.H. tried on had ties that wrapped around the dress and tied in front.  Laurie testified that after saying "no" to Olson, T.H. stuck close to her.

The same day, Laurie asked Catherine Cain to watch her children.  When Laurie returned to God's Love, Cain, T.H., J.H., and Olson were playing cards around a table.

No other people in the room looked like Olson. Later that day, T.H. and J.H. told Laurie something had happened at God's Love.

T.H. testified she found a dress in the basement. A man helped her put it on even though she did not ask for help. When the man helped her, he touched her between her legs, and she described the touch as a rub.

Olson remembered the dress incident. The dress had two long ties which were touching the floor and were a safety hazard to T.H. if she stepped on them. To prevent the ties from becoming dirty and to eliminate the hazard, Olson tied a knot in front of the dress. He denied sexually assaulting T.H. He admitted that in tying the knot, he probably brushed up against T.H. but claimed his touching did not lead him to be sexually aroused or gratified.

J.H. testified she was at God's Love sitting on a man's lap playing cards. A man touched her slowly twice where her legs meet at the top. She identified Olson as the man with whom she was playing cards.

At trial, Olson recalled the day to which J.H. referred. He stated J.H., T.H., Cain, and other adults were sitting at a table but claimed he was sitting elsewhere. He denied sexually assaulting J.H. He stated J.H. never sat on his lap because for months after the surgery on his varicose veins it was painful to have anything on his lap.

Officer Drynan interviewed T.H. and J.H, who described the person who had touched them. After the interview, Officer Drynan and another officer went to God's Love. They described the suspect, and the God's Love staff gave them two names. However, when the officers informed the staff that the suspect wore glasses and red suspenders, the staff informed them that only Olson wore red suspenders.

The State charged Olson by amended information dated March 21, 1996, with three counts of sexual assault in violation of õ 45-5-502, MCA. Count I alleged Olson sexually assaulted W.M., Count II alleged Olson sexually assaulted T.R., and Count III alleged Olson sexually assaulted T.H. and J.H. Olson pleaded not guilty to all three counts.

Olson waived his right to a jury trial. Following a bench trial, the District Court found him guilty on all three counts. The court sentenced Olson to the Montana State Prison for three consecutive fifteen-year sentences, with five years suspended on each.

## DISCUSSION

1. Did the District Court abuse its discretion when it determined J.H. was competent to testify?

Rule 601, M.R.Evid., provides:

(a) General rule competency. Every person is competent to be a witness except as otherwise provided in these rules.

(b) Disqualification of witnesses. A person is disqualified to be a witness if the court finds that (1) the witness is incapable of expression concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand the witness or

(2) the witness is incapable of understanding the duty of a witness to tell the truth.

Witness competency is within the discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Walters (1991), 247 Mont. 84, 90, 806 P.2d 497, 500. The requirements for determining competency are "capacity of expression and appreciation of the duty to tell the truth." State v. Eiler (1988), 234 Mont. 38, 42, 762 P.2d 210, 213. A witness appreciates her duty to tell the truth if she understands the difference between the truth and a lie and understands that she has to tell the truth in court. Eiler, 762 P.2d at 214-15.

Rule 601 has no age requirement. State v. Rogers (1984), 213 Mont. 302, 307, 692 P.2d 2, 5. This Court allowed the testimony of a four-year-old victim in Walters, 806 P.2d at 500; and the testimony of a five-year-old victim in State v. Howard (1991), 247 Mont. 370, 372, 806 P.2d 1038, 1039.

Olson argues that J.H., who was six when she testified, lacked an appreciation of the duty to tell the truth. After citing an incomplete portion of the trial record, Olson suggests J.H. was not a competent witness because she could not explain what a lie was or what the truth was.

J.H. testified it was not true the prosecutor was wearing blue jeans and cowboy boots, and it was true the prosecutor was wearing a black skirt, a black jacket, and black shoes. J.H. correctly stated the prosecutor would not be telling the truth if she stated J.H. was sitting with her father but would be telling the truth if she stated J.H. was sitting with her mother. J.H. testified while sitting in her mother's lap.

J.H. stated she knew she had to tell the truth and had to tell what happened. She acknowledged it was a good thing to tell the truth and a bad thing to lie. J.H. disclosed to the court she knew the difference between the truth and a lie when she stated the prosecutor would be lying and not telling the truth if she stated J.H. was sitting in a grocery store.

J.H.'s testimony demonstrated she knew the difference between the truth and a lie and the importance of telling the truth in court. Her testimony allowed the court to find that she appreciated her duty to tell the truth and that she was competent to testify. We conclude the District Court did not abuse its discretion when it determined J.H. was competent to testify.

2. Was there sufficient evidence to support Olson's convictions of sexual

assault?

This Court reviews sufficiency of the evidence to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Ahmed (1996), 278 Mont. 200, 212, 924 P.2d 679, 686, cert. denied (1997), ___ U.S. ___, 117 S.Ct. 748, 136 L.Ed.2d 686.

The credibility of witnesses and the weight to be given to their testimony are determined by the trier of fact, and disputed questions of fact and credibility will not be disturbed on appeal. Ahmed, 924 P.2d at 686. If evidence conflicts, it is within the province of the trier of fact to determine which will prevail. Ahmed, 924 P.2d at 686.

In a sex offense case, a victim's testimony does not need to be corroborated. State v. Gilpin (1988), 232 Mont. 56, 70, 756 P.2d 445, 453.

Olson was convicted of three counts of sexual assault pursuant to õ 45-5-502, MCA, which provides, in relevant part:

(1) A person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault.

. . . .

(3) If the victim is less than 16 years old and the offender is 3 or more years older than the victim or if the offender inflicts bodily injury upon anyone in the course of committing sexual assault, the offender shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 2 years or more than 100 years and may be fined not more than $50,000.

. . . .

(5) Consent is ineffective under this section if the victim is less than 14 years old and the offender is 3 or more years older than the victim.

Section 45-2-101(65), MCA, defines sexual contact as "any touching of the sexual or other intimate parts of the person of another for the purpose of arousing or gratifying the sexual desire of either party."

This Court has construed the term "sexual contact." See State v. Howie (1987), 228 Mont. 497, 503, 744 P.2d 156, 159 (rubbing belly and between legs); State v. Weese (1980), 189 Mont. 464, 467-68, 616 P.2d 371, 373-74 (rubbing belly and chest of prepubescent girl).

Olson argues he should not have been convicted of sexually assaulting J.H. because there was not substantial evidence that he subjected J.H. to sexual contact. He further claims there was not substantial evidence that he knowingly subjected T.H., W.M., and T.R. to sexual contact for the purpose of arousing or gratifying his sexual desire.

Relying on Howie, 744 P.2d at 159, Olson maintains there is insufficient evidence to convict him of sexual assault of J.H. because J.H.'s testimony conflicts with other trial testimony. Specifically, he argues: Cain indicated to Officer Drynan that Olson was not sitting at the table with J.H.; Cain told Officer Drynan she did not think Olson was ever alone with the girls; J.H.'s mother testified there were eight to ten people at the table with J.H.; and J.H.'s mother could not remember whether Olson was standing or sitting when she returned. We are unpersuaded by Olson's arguments.

First, Olson misinterprets Howie. He claims this Court held "in a sexual assault case a defendant may be convicted on the basis of a complaining witness' uncorroborated testimony if that testimony is found to be consistent with other proof legally presented at trial."

In Howie, while discussing the case of State v. A.D.M. (1985), 216 Mont. 419, 701 P.2d 999, we mentioned the word "consistent" in conjunction with the issue of a five-year-old sexual assault victim's competency to testify.

In State v. A.D.M., a five-year-old child was held to be competent to testify about sexual abuse by her father because her testimony was consistent with her prior reports and were supported by psychological testimony. Therefore, that child's testimony required no corroboration. Whether a child is competent to testify is a matter left largely to the discretion of the trial court.

Howie, 744 P.2d at 159 (citations omitted).

Although we held in Howie that a sexual assault conviction may be based entirely on a victim's uncorroborated testimony, we did not hold that the victim's testimony must be "consistent with other proof legally presented at trial." Howie, 744 P.2d at 159.

However, in State v. Medina (1990), 245 Mont. 25, 33, 798 P.2d 1032, 1038, we cited Howie and held: "The uncorroborated testimony of the victim is sufficient to support a conviction of sexual assault provided that such testimony is consistent with other evidence." Medina, 798 P.2d at 1038. This Court also mentioned the "consistency" requirement in Rogers, 692 P.2d at 5, and State v. D.B.S. (1985), 216 Mont. 234, 241, 700 P.2d 630, 635.

After a review of Rogers, D.B.S., and Medina, we conclude this Court incorrectly held that a victim's uncorroborated testimony must be consistent with other evidence to support a conviction. To the extent Rogers, D.B.S., and Medina express an opinion inconsistent with Howie and the instant case, they are overruled. We hold that a child victim's testimony does not need to be corroborated to support a conviction of sexual assault. Whether the child's testimony is consistent or inconsistent with other

evidence offered at trial affects the weight and credibility of the testimony.

The District Court, as trier of fact, was aware of the conflict between J.H.'s testimony and other testimony concerning the events of the sexual assault. In weighing the evidence, the conflicting testimony, and witness credibility, the District Court properly exercised its discretion and chose to believe J.H.'s testimony. After viewing the evidence in a light most favorable to the prosecution, we conclude there was sufficient evidence for the District Court to find the essential elements of the crime of sexual assault of J.H. beyond a reasonable doubt.

Olson argues the State could not prove its charges beyond a reasonable doubt because T.H. was wearing clothes underneath the dress, T.H. did not indicate any discomfort to him, and T.H.'s mother was less than ten feet away when the assault occurred.

Olson's claims are unpersuasive. Olson did not have to have direct contact with T.H.'s vaginal area underneath her clothing to have sexual contact with her. See Gilpin, 756 P.2d at 452. His rubbing T.H.'s vaginal area on the outside of her clothing was sufficient evidence to prove sexual contact. Moreover, the fact that T.H. did not immediately indicate any discomfort with Olson's rubbing does not prove that Olson did not sexually assault her.

T.H.'s mother was nearby when Olson rubbed T.H. between her legs. This does not prove the assault did not happen. Although T.H.'s mother was in the basement when the assault occurred, she did not watch Olson the entire time. The District Court rejected Olson's claim that the assault did not take place because Laurie was nearby. We decline to reweigh this evidence on appeal.

Olson also argues there was insufficient evidence to allow an inference that he knowingly subjected T.H. to sexual contact for the purpose of arousing or gratifying his sexual desire. T.H. testified that she found a dress among the clothes in the basement of God's Love. Olson helped her try it on even though she did not ask for assistance. While doing so, he touched her between her legs--a touch T.H. described as a rub. Laurie testified that Olson spoke with T.H. about a dress, and when Olson told T.H. he would help her with it, T.H. responded "no." After saying "no," T.H. stuck close to her mother's side.

After reviewing the evidence and the credibility of the witnesses, the trial court chose to discount Olson's claim that he accidentally touched T.H. The court found that Olson's rubbing T.H.'s vaginal area was for the purpose of arousing or gratifying his sexual desire. There was sufficient evidence to support Olson's conviction of

sexually
assaulting T.H.

Olson argues there was insufficient evidence to allow the District Court to find that he knowingly touched W.M.'s breasts with the purpose of arousing or gratifying his sexual desire.  The evidence indicates otherwise.

W.M. explored the basement of God's Love without permission, and while there, had been alone with Olson.  W.M. admitted to her mother that a man had touched her in a bad way.  W.M. testified to riding a Big Wheel when Olson came up to her from behind and rubbed her breasts.  She explained that Olson rubbed her breasts when he gave her a dress.  W.M. drew a picture which depicted Olson coming to her from behind and touching her breasts.

The above testimony was sufficient for the District Court to find that Olson knowingly had sexual contact with W.M., and he knowingly rubbed W.M.'s breasts for the purpose of arousing or gratifying his sexual desire.

Olson argues the evidence is insufficient to convict him of sexually assaulting T.R. because he did not have any sexual contact with her.  He claims that when he showed T.R. how to tie a tie he inadvertently touched her chest and was not sexually aroused or gratified.

We are unpersuaded by Olson's argument.  In weighing the evidence and deciding witness credibility, the District Court believed T.R.'s testimony that Olson rubbed her breasts and rejected Olson's claim that he accidentally brushed them.  We reject Olson's request to reweigh the evidence and to reexamine T.R.'s credibility.

Finally, Olson argues the State failed to prove the element of sexual contact because it did not establish that he touched T.R.'s breasts for the purpose of arousing or gratifying his sexual desire.  In addressing the issue of "purpose" under the element of sexual contact, we have stated, "[i]ntent is a fact question for the jury, and it is well settled that the jury may infer intent from defendant's acts."  State v. Riley (1995), 270 Mont. 436, 441, 893 P.2d 310, 314.

The District Court, as trier of fact, acted within its discretion when it found that Olson's rubbing T.R.'s breasts was for the purpose of arousing or gratifying his sexual desire.  The court found:

men usually do not go around rubbing the breasts or vaginal areas of small girls.  Indeed, someone that would consistently rub the breasts or vaginal areas of small girls is obviously committing a sexual assault and is doing so for his own strange sexual desire.

The court correctly found that Olson's rubbing T.R.'s breasts was for the purpose of arousing or gratifying his sexual desire.

We conclude there was sufficient evidence to support the District Court's order finding Olson guilty of three counts of sexual assault.

Affirmed.

/S/  J. A.  TURNAGE


We concur:

/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER